John A. Bennett, OSB #750407
E-mail: john.bennett@bullivant.com
Stuart D. Jones, OSB #842568
E-mail: stuart.jones@bullivant.com
**BULLIVANT HOUSER BAILEY PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204
Telephone: 503.228.6351

Antonia B. Ianniello (admitted *pro hac vice*)
E-mail: aianniello@steptoe.com
Sara Faber (admitted *pro hac vice*)
E-mail: sfaber@steptoe.com
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-8087
Facsimile: 202 429-3902

Attorneys for Defendant Continental Western
Insurance Company

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| SERO, INC. dba Beast, an Oregon corporation, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>CONTINENTAL WESTERN INSURANCE COMPANY, an Iowa Corporation, et al.<br><br>      Defendants. | Civil No.: 3:20-cv-00776-YY<br><br>**CONTINENTAL WESTERN INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND FACTS ....................................................................................... 3

   A.   Plaintiff's Amended Complaint ................................................................... 3

   B.   The Policy .................................................................................................... 5

III. GOVERNING LEGAL STANDARDS .................................................................. 7

   A.   Plaintiff Must State a Claim to Relief that is Plausible on its Face ............ 7

   B.   Oregon Courts Enforce Insurance Contracts as Written ............................ 9

IV.  ARGUMENT ......................................................................................................... 9

   A.   Plaintiff Has Not Plausibly Alleged the Direct Physical Loss of or Damage  to Property Required by the Policy ............................................................. 10

      1.   Plaintiff Has Alleged No Distinct, Demonstrable Alteration  of Property as Required by Oregon Law .................................................. 10

      2.   The Overwhelming Majority of Courts Considering COVID-19 Business Income Claims Based on Similar Facts Have Ruled that There Is No Coverage ...................................................................... 13

      3.   Plaintiff's Allegations that Persons Infected with COVID-19  Likely Entered its Restaurant or that the Coronavirus Likely Infected Surfaces, Air or People There Are Insufficient to Trigger coverage ........................................... 20

      4.   The Policy as a Whole Makes Clear that Loss of Use of Property Does Not Constitute Direct Physical Loss .................................................. 23

   B.   There Is No Coverage Under the Policy's Civil Authority Provision .................... 25

      1.   Plaintiff Has Not Plausibly Alleged that the Government Orders Were Issued as a Result of Damage to Property Within One Mile  of the Insured Premises ..... 25

      2.   The Government Orders Do Not Prohibit Access to the Insured's Premises .......................................................................... 29

   C.   Plaintiff's Claims Are Also Barred by the Ordinance or Law, Acts  or Decisions and Loss of Use Exclusions ........................................................ 31

   D.   Judgment Should be Entered on All Claims in the Amended Complaint ................ 33

IV.  CONCLUSION ..................................................................................................... 35

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF CONTENTS**
**Page i**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
    483 F. Supp. 3d 828 (C.D. Cal. 2020) ................................................................14, 27

*1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*,
    __ F. Supp. 3d __, 2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020) .........................25, 30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................7, 8, 12

*Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*,
    No. 2:20-cv-171, 2021 WL 1976404 (D. Vt. May 18, 2021) ............................................26

*B Street Grill & Bar LLC. v. Cincinnati Ins. Co.*,
    __ F. Supp. 3d __, 2021 WL 857361 (D. Ariz. Mar. 8, 2021)...................................16, 30

*Baker v. Or. Mut. Ins. Co.*,
    No. 20-cv-05467-LB, 2021 WL 1145882 (N.D. Cal. Mar. 25, 2021) .........................15, 23

*Baker v. Or. Mut. Ins. Co.*,
    No. 20-cv-05467-LB, 2021 WL 24841 (N.D. Cal. Jan. 4, 2021) ....................................24

*Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*,
    __ F. Supp. 3d __, 2021 WL 37984 (E.D. Mo. Jan. 5, 2021) ............................................13

*Barbizon School of S.F., Inc. v. Sentinel Ins. Co.*,
    __ F. Supp. 3d __, 2021 WL 1222161 (N.D. Cal. Mar. 31, 2021) ...................................27

*Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*,
    __ F. Supp. 3d __, 2021 WL 1400891 (D. Md. Apr. 14, 2021).......................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................8, 21, 22

*Bjugan v. State Farm Fire & Cas. Co.*,
    969 F. Supp. 2d 1283 (D. Or. 2013) ...................................................................9

*Bluegrass, LLC v. State Auto. Mut. Ins. Co.*,
    __ F. Supp. 3d __, 2021 WL 42050 (S.D.W.V. Jan. 5, 2021) ..........................................14

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page ii**

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
 __ F. Supp. 3d __, 2020 WL 7889047 (N.D. Ill. Dec. 22, 2020) ...................................26

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
 __ F. Supp. 3d __, 2021 WL 663675 (N.D. Ohio Feb. 19, 2021) ....................................22

*Bush v. State Farm Fire & Cas. Co.*,
 124 F. Supp. 2d 1203 (D. Or. 2000) ................................................................................33

*Café Plaza de Mesilla Inc. v. Cont'l Cas. Co.*,
 __ F. Supp. 3d __, 2021 WL 601880 (D.N.M. Feb. 16, 2021).........................................21

*Chavez v. United States*,
 683 F.3d 1102 (9th Cir. 2012) ............................................................................................8

*Circus Circus LV, LP v. AIG Spec. Ins. Co.*,
 __ F. Supp. 3d __, 2021 WL 769660 (D. Nev. Feb. 26, 2021).........................................15

*Colgan v. Sentinel Ins. Co.*,
 __ F. Supp. 3d __, 2021 WL 472964 (N.D. Cal. Jan. 26, 2021)......................................19

*Columbiaknit, Inc. v. Affiliated FM Insurance Co.*,
 No. Civ. 98-434-HU, 1999 WL 619100 (D. Or. Aug. 4, 1999) ...........................10, 11, 22

*Deer Mountain Inn LLC v. Union Ins. Co.*,
 No. 1:20-cv-0984 (BKS/DJS), 2021 WL 2076218 (N.D.N.Y. May 24,
 2021) ...........................................................................................................................26, 28

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
 636 F.3d 683 (5th Cir. 2011) ............................................................................................26

*DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*,
 __ F. Supp. 3d __, 2021 WL 1232778 (S.D. Tex. Mar. 12, 2021) ...................................22

*El Novillo Rest. v. Certain Underwriters at Lloyd's, London*,
 __ F. Supp. 3d __, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020)......................................16

*Eurosemillas, S.A. v. Uttarwar*,
 __ Fed. App'x. __, 2021 WL 1108611 (9th Cir. Mar. 23, 2021)....................................7, 8

*Family Tacos, LLC v. Auto Owners Ins. Co.*,
 __ F. Supp. 3d __, 2021 WL 615307 (N.D. Ohio Feb. 17, 2021) ....................................32

*Flores v. Barr*,
 934 F. 3d 910 (9th Cir. 2019) ...........................................................................................23

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page iii**

*FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*,
 __ F. Supp. 3d __, 2021 WL 857004 (S.D. Cal. Mar. 8, 2021) ........................................32

*Food for Thought Caterers Corp. v. Sentinel Ins. Co.*,
 __ F.Supp.3d __, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) ...........................................22

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,
 488 F. Supp. 3d 904 (N.D. Cal. 2020) .............................................................................29

*French Laundry Partners, LP v. Hartford Fire Ins. Co.*,
 __ F. Supp. 3d __, 2021 WL 1640994 (N.D. Cal. Apr. 27, 2021) .......................................9

*Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*,
 No. CV 20-4647-GW-MAAx, 2020 WL 7350413 (C.D. Cal. Dec. 3, 2020)...................19

*Gerleman Mgmt., Inc. v. Atl. States Ins. Co.*,
 __ F. Supp. 3d __, 2020 WL 8093577 (S.D. Iowa Dec. 11, 2021)............................14, 27

*Gov't Emps. Ins. Co. v. Leif's Auto Collision Ctrs., LLC*,
 No. 3:17-cv-045-PK, 2018 WL 3153476 (D. Or. Mar. 2, 2018) ........................................7

*Great American Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*,
 461 F. Supp. 1098 (D. Or. 2019) ....................................................................................34

*Great Northern Insurance Co. v. Benjamin Franklin Federal Savings*
 *& Loan Ass'n*,
 793 F. Supp. 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992).......................10, 11

*Gregg v. Haw., Dep't of Pub. Safety*,
 870 F.3d 883 (9th Cir. 2017) ............................................................................................7

*Hajer v. Ohio Sec. Ins. Co.*,
 505 F. Supp. 3d 646 (E.D. Tex. 2020).............................................................................29

*Hanson v. State Farm Mut. Auto. Ins. Co.*,
 261 F. Supp. 3d 1110 (W.D. Wash. 2017).......................................................................34

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
 495 F. Supp. 3d 1289 (N.D. Ga. 2020) ...........................................................................16

*Hoffman Constr. Co. v. Fred S. James & Co.*,
 836 P.2d 703 (Or. 1992) ..................................................................................................24

*Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*,
 No. 5:20-cv-06165-JMG, 2021 WL 1945713 (E.D. Pa. May 14, 2021) ....................17, 31

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page iv**

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
   __ F. Supp. 3d __, 2021 WL 117898 (S.D. Fla. Jan. 11, 2021)........................................13

*Johnson v. Hartford Fin. Servs. Grp., Inc.*,
   __ F. Supp. 3d __, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) ...........................................21

*Kamakura, LLC v. Greater N.Y. Mut. Ins. Co.*,
   __ F. Supp. 3d __, 2021 WL 1171630 (D. Mass. Mar. 9, 2021) .......................................28

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
   440 F. Supp. 3d 520 (D.S.C. 2020).................................................................................25

*Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co.*,
   No. 20-CV-04783-SK, 2021 WL 141180 (N.D. Cal. Jan. 13, 2021) ........................15, 24

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
   __ F. Supp. 3d __, 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021)...................................23

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...........................................................................................8

*Levy Ad Grp., Inc. v. Chubb Corp.*,
   __ F. Supp. 3d __, 2021 WL 777210 (D. Nev. Feb. 16, 2021)........................................15

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ..............................................................................................8

*Marshall v. Wells Cap. Mgmt., Inc.*,
   No. 07-309-HU, 2007 WL 4565164 (D. Or. Dec. 19, 2007)............................................33

*Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co.*,
   No. 3:20-cv-1230-AJB-RBB, 2021 WL 1226447 (S.D. Cal. Mar. 30, 2021) ..................29

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
   __ F. Supp. 3d __, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020)..........................3, 14, 24

*Mortar & Pestle Corp. v. Atain Spec. Ins. Co.*,
   No. 20-cv-03461, 2020 WL 7495180 (N.D. Cal. Dec. 21, 2020)...................15, 16, 29, 32

*Motiv Grp., Inc. v. Cont'l Cas. Co.*,
   No. 2:20-cv-09368-ODW (Ex), 2021 WL 1240779
   (C.D. Cal. Apr. 1, 2021)...................................................................................................14

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
   487 F. Supp. 3d 834 (N.D. Cal. 2020) .......................................................................29, 32

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page v**

*N. Pac. Ins. Co. v. Hamilton*,
22 P.3d 739 (Or. 2001).................................................................................9, 23

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
__ F. Supp. 3d __, 2020 WL 7395153 (E.D. Pa. Dec. 17, 2020) ..............................16, 32

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014)................................................................24

*Nguyen v. Travelers Cas. Ins. Co.*,
__ F. Supp. 3d __, 2021 WL 2184878 (W.D. Wash. May 28, 2021) ....................... *passim*

*O'Brien Sales & Mktg. Inc. v. Transp. Ins. Co.*,
No. 20-cv-02951, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021)........................................15

*Ortiz v. State Farm Fire & Cas. Co.*,
260 P.3d 678 (Or. App. 2011)...................................................................9

*Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*,
__ F. Supp. 3d __, 2021 WL 1056627 (N.D. Cal. Mar. 19, 2021) .....................................3

*Palmdale Estates, Inc. v. Blackboard Ins. Co.*,
No. 20-cv-06158-LB, 2021 WL 25048 (N.D. Cal. Jan. 4, 2021) ....................................15

*Pappy's Barber Shops, Inc. v. Farmers Group*,
487 F. Supp. 3d 937 (S.D. Cal. 2020)......................................................23, 29

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
491 F. Supp. 3d 738 (S.D. Cal. 2020)..................................................23, 29, 30

*Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*,
__ F. Supp. 3d __, 2021 WL 1210000 (E.D. Pa. Mar. 31, 2021) ....................................32

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,
485 F. Supp. 3d 1225 (C.D. Cal. 2020) ...........................................................15

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
504 F. Supp. 3d 1191, 1202 (D. Kan. 2020).........................................13, 21, 23

*Prot. Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp.*,
992 P.2d 479 (Or. App. 1999)..................................................................9

*Protégé Rest. Partners LLC v. Sentinel Ins. Co.*,
No. 20-CV-03674-BLF, 2021 WL 428653 (N.D. Cal. Feb. 8, 2021)................................14

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
    No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. June 18, 2002) ..................12

*Ralph Lauren Corp. v. Factory Mut. Ins. Co.*,
    No. 20-10167 (SDW) (LDW), 2021 WL 1904739 (D.N.J. May 12, 2021) .....................21

*Real Hosp., LLC v. Travelers Cas. Inc. of Am.*,
    499 F. Supp. 3d 288 (S.D. Miss. 2020).............................................17

*Safeco Ins. Co. v. Masood*,
    330 P.3d 61 (Or. App. 2014)...............................................................9

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    __ F. Supp. 3d __, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) ..................24

*Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*,
    No. 4:20-CV-1249 RLW, 2021 WL 1889866 (E.D. Mo. May 11, 2021) ........................23

*Steiner Steakhouse, LLC v. AMCO Ins. Co.*,
    No. 1:20-cv-00858-LY (W.D. Tex. Dec. 30, 2020) ...................................16, 27

*Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*,
    No. 1:20-cv-21827-GAYLES/OTAZO-REYES, 2020 WL 7699672
    (S.D. Fla. Dec. 28, 2020) ..........................................................16

*Sys. Optics, Inc. v. Twin City Fire Ins. Co.*,
    No. 5:20-cv-1072, 2021 WL 2075501 (N.D. Ohio May 24, 2021) ....................2

*Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.*,
    __ F. Supp. 3d __, 2021 WL 972878 (W.D. Tex. Jan. 21, 2021).......................22

*Torgerson Props., Inc. v. Cont'l Cas. Co.*,
    __ F. Supp. 3d __, 2021 WL 615416 (D. Minn. Feb. 17, 2021).......................13

*Trader Joe's Co. v. Hallatt*,
    835 F.3d 960 (9th Cir. 2016) .......................................................34

*Tralom, Inc. v. Beazley USA Servs., Inc.*,
    2020 WL 8620224 (C.D. Cal. 2020).................................................29

*Tucker v. Intel Corp.*,
    141 Fed. App'x. 524 (9th Cir. 2005) ................................................34

*Union Station Assocs. v. Puget Sound Energy, Inc.*,
    238 F. Supp. 2d 1226 (W.D. Wash. 2002)........................................33

**Bullivant|Houser|Bailey PC**

**TABLE OF AUTHORITIES**
**Page vii**

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
No. 3:20-cv-01129-H-MDD, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) ...................14

*Uptown Market, LLC v. Ohio Sec. Ins. Co.*,
286 F. Supp. 3d 1160 (D. Or. 2018) ...............................................................................9

*Veloz v. Foremost Ins. Co. Grand Rapids, Mich.*,
306 F. Supp. 3d 1271 (D. Or. 2018) ..............................................................................33

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
498 F. Supp. 1233 (C.D. Cal. 2020) ..............................................................................14

*Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*,
__ F. Supp. 3d __, 2021 WL 389215 (S.D. Cal. Feb. 3, 2021)..................................22, 30

*Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*,
503 F. Supp. 3d 884 (S.D. Iowa 2020) .....................................................................19, 32

*Wyo. Sawmills, Inc. v. Transp. Ins. Co.*,
578 P.2d 1253 (Or. 1978) (en banc) ..............................................................................12

*Yang v. Dar Al-Handash Consultants*,
250 Fed. App'x. 771 (9th Cir. 2007) ...........................................................................8, 31

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page viii**

## CERTIFICATE OF CONFERRAL

In compliance with LR 7-1(a), the parties made a good faith effort through a telephone conference to resolve the dispute but have been unable to do so.

## MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Continental Western Insurance Company ("Continental Western") respectfully moves the Court for judgment on the pleadings against Plaintiff Sero, Inc., d/b/a Beast ("Sero") for the reasons set forth in the following memorandum in support.

## I.    INTRODUCTION

Plaintiff Sero, the owner of a restaurant in Portland called "Beast," seeks insurance coverage from Continental Western on behalf of itself and a putative class for economic losses it claims to have suffered as a result of the Coronavirus pandemic and government orders issued to limit its spread.  But the insurance policy that Continental Western issued to Plaintiff ("Policy") does not cover any of Plaintiff's claimed business losses for several reasons:

*First*, the Policy's "Business Income," "Extended Business Income," and "Extra Expense" coverages only apply when the suspension of business operations was caused by "direct physical loss of or damage to" insured property.  Plaintiff has not plausibly alleged that anything physical happened to its property.  The conclusory and speculative allegations that it is "likely" that customers, employees, vendors or other persons infected with the Coronavirus entered Beast or the virus "otherwise infected surfaces, air or people at Beast" is insufficient to plausibly allege physical loss of or damage to property.  Nor can government orders designed to curb the spread of COVID-19 constitute the physical loss or damage required by the Policy.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 1**

Oregon courts have soundly rejected the argument that "loss of use," unaccompanied by physical alteration to property, amounts to direct physical loss or damage.  Moreover, the overwhelming majority of courts in the Ninth Circuit and nationwide have rejected insurance coverage claims for COVID-19 losses, holding that temporary "loss of use" of property that has not been physically changed or altered does not constitute direct physical loss or damage.

*Second*, the prerequisites for Civil Authority coverage have not been met.  The Policy's Civil Authority coverage is triggered only when a Covered Cause of Loss (defined as "direct physical loss") causes "damage" to property not more than one mile from the insured property, an action of civil authority "prohibits access" to the insured property as a result of the damage, and the "action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." Plaintiff's Amended Complaint contains no plausible allegations satisfying these requirements.

*Third,* Plaintiff fails to state claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the state of Washington's consumer protection laws.  As courts have held, conclusory allegations of unreasonable denial of coverage, incomplete investigation and deceitful conduct, like that alleged here, fail as a matter of law given the lack of merit to Plaintiff's coverage claims.

As of this filing, more than 200 courts across the country, representing the overwhelming majority of courts, have rejected identical claims for coverage of COVID-19 business losses under property policies strikingly similar to the Policy.  *See Sys. Optics, Inc. v. Twin City Fire Ins. Co.,* No. 5:20-cv-1072, 2021 WL 2075501, at *8 (N.D. Ohio May 24, 2021) ("[T]he majority of courts to address the issue have . . . found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 2**

to insured property."); *Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, __ F. Supp. 3d __,

2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021) ("The overwhelming majority of courts have

concluded that neither COVID-19 nor the governmental orders associated with it cause or

constitute property loss or damage for purposes of insurance coverage."); *Michael Cetta, Inc. v.*

*Admiral Indem. Co.*, __ F. Supp. 3d __, 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020)

("[N]early every court to address this issue has concluded that loss of use of a premises due to a

governmental closure order does not trigger business income coverage premised on physical loss

to property").  As the Western District of Washington concluded just last month in dismissing

similar COVID-19 complaints, the "overwhelming consensus" of courts is that "COVID-19 does

not cause the physical loss or damage to property required as a condition precedent to trigger

coverage" under commercial property policies.  *See Nguyen v. Travelers Cas. Ins. Co.*, __ F.

Supp. 3d __, 2021 WL 2184878, at *1 (W.D. Wash. May 28, 2021).  This Court should follow

the well-reasoned precedent of these courts and grant Continental Western's Motion for

Judgment.[1]

## II.  BACKGROUND FACTS

### A.  Plaintiff's Amended Complaint

Plaintiff is an Oregon corporation that operated Beast, a now-shuttered restaurant in

Portland, Oregon. Amended Complaint ("AC") ¶¶ 1, 2, ECF No. 53.  Continental Western issued

commercial property insurance to Plaintiff for the policy period May 18, 2019 to May 18, 2020.

---

[1] Berkley North Pacific Group, LLC, Berkley Insurance Company and W. R. Berkley
Corporation previously were named as Defendants in this action, but were dismissed by
Stipulation without prejudice.  Thus, granting Continental Western's Motion will dispose of this
case.

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 3**

*See* AC ¶ 56; Policy at 33, ECF No. 53-7.[2]  The Policy provides coverage for a single designated location, subject to all of the Policy's terms, conditions and exclusions.

The Complaint recounts the history of the COVID-19 pandemic and the ensuing government orders issued to "slow the spread of COVID-19."  AC ¶¶ 16, 27–39.  On March 17, 2020, the Governor of Oregon issued Executive Order 20-07, prohibiting restaurants from offering on-premises consumption of food or drink.  *Id.* ¶ 31; AC, Ex. 1 at 2, ECF No. 53-1. Significantly, however, Executive Order 20-07 allowed restaurants to continue selling food or drink for off-premises consumption, including take-out or drive through, or for delivery.  AC, Ex. 1 at 3; AC ¶ 31.  Executive Order 20-07 was subsequently extended by Executive Order 20-14 (collectively, the "Government Orders").  AC, Ex. 2, ECF No. 53-2; AC ¶ 33.

Plaintiff alleges it closed its restaurant in March 2020 in response to the Coronavirus and Government Orders to stop the spread of the disease.  AC ¶2.  Despite being allowed to offer take-out, drive-through and delivery services, Plaintiff alleges that the "inherently dangerous conditions" created by COVID-19 prohibited it from accessing, using, or operating Beast and rendered its facilities "no longer usable for their intended purpose(s)."  *Id.* ¶¶ 42, 52–53.

More specifically, Plaintiff alleges that, "[a]s Coronavirus spread, the streets on which Beast is located, the district in which it is located, and the ventilation systems, buildings, and objects in and around them, became a breeding ground for the disease.  Numerous individuals around Beast also tested positive for Coronavirus as it was assuredly being transmitted in or between properties throughout the areas near Beast, including but not limited to transmission

---

[2] A copy of the Policy is attached as Exhibit 7 to Plaintiff's Amended Complaint.  *See* ECF No. 53-7.  Citations to the Policy will be to "Policy" and the ECF pagination.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 4**

through the air, shared buildings and facilities, through ventilation systems, or through contact with contaminated surfaces." *Id.* ¶ 41.  Plaintiff also alleges that "*it is likely* that customers, employees, vendors, or other persons infected with or carrying Coronavirus particles entered Beast, or that Coronavirus otherwise infected surfaces, air, or people at Beast.  This caused physical damage to or loss of property." *Id.* ¶ 43 (emphasis added).  Plaintiff does not allege that the Coronavirus *actually was present on its property*, just that the "Coronavirus and its pernicious spread created inherently dangerous conditions where Beast and property within it was at immediate and imminent risk of exposure to the Coronavirus.  This caused the Beast [sic] to suspend operations and lose access to its premises." *Id.* ¶ 42.

On March 17, 2020, the same day Executive Order 20-07 was issued, Plaintiff submitted a claim to Continental Western for its impending business losses under the Policy.  *Id.* ¶¶ 82–83. Continental Western denied Plaintiff's claim on March 24, 2020.  *Id.* ¶ 88.  Plaintiff brought this action on May 13, 2020, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair or deceptive trade practices in violation of the Washington Consumer Protection Act, Rev. Code of Wash. § 19.86.010, *et seq. Id.* ¶¶ 108–141.  It also seeks declaratory and injunctive relief.  *Id.* ¶¶ 142–151, pg. 27.  Plaintiff brings these claims on its own behalf and on behalf of a putative class of individuals or entities nationwide that own an interest in a food service establishment and did not receive coverage for their COVID-19 business losses from Continental Western.  *Id.* ¶ 98.

###  B.    The Policy

The Policy is a Commercial Lines Policy with five coverage parts.  Policy at 33.  Only the Commercial Property Coverage Part of the Policy is implicated in this suit.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 5**

The Policy provides coverage under the "Business Income (and Extra Expense) Coverage Form", as follows, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by *direct physical loss of or damage to property* at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be *caused by or result from a Covered Cause of Loss.*

*Id.* at 123 (emphasis added). A "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 134. The "period of restoration" begins "72 hours after the time of direct physical loss or damage" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." *Id.* at 131.

The Policy also provides "Extra Expense" coverage for "necessary expenses" incurred during the period of restoration that "would not have [been] incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* at 123. The Policy's "Extended Business Income" coverage extends the time period of coverage for loss of business income "caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss." *Id.* at 125.

Plaintiff also seeks coverage under the Policy's "Civil Authority" provisions, which state:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 6**

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 124.  The "described premises" is the building where Plaintiff's restaurant Beast is located. *Id.* at 60.

As is evident from the plain wording of the Policy, all of these coverage grants share at least two essential prerequisites:  there must some type of "direct physical loss of or damage to" property and it must be caused by a "Covered Cause of Loss."

## III.    **GOVERNING LEGAL STANDARDS**

### A.    **Plaintiff Must State a Claim to Relief that is Plausible on its Face**

A Rule 12(c) motion for judgment on the pleadings challenges the legal sufficiency of the claims made in the complaint and is subject to the same standard of review as motions to dismiss pursuant to Rule 12(b)(6).  *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Gov't Emps. Ins. Co. v. Leif's Auto Collision Ctrs.*, *LLC*, No. 3:17-cv-045-PK, 2018 WL 3153476, at *2 (D. Or. Mar. 2, 2018).  Thus, to survive a motion for judgment on the pleadings, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Eurosemillas, S.A. v. Uttarwar*, __ Fed. App'x. __, 2021 WL 1108611, at *2 (9th Cir. Mar. 23, 2021) (applying the *Iqbal* standard to a motion for judgment on the pleadings).

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 7**

In evaluating the plausibility of the claims in a complaint, more is required than "labels and conclusions," and "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor will courts accept legal conclusions couched as factual allegations to satisfy pleading requirements. *Iqbal,* 556 U.S. at 679.  A "threadbare recital" of a cause of action "without any supporting facts, is not enough to survive a motion for judgment on the pleadings." *Eurosemillas*, 2021 WL 1108611, at *2.  Rather, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.  When a complaint does not adequately plead a claim of entitlement to relief, judgment is warranted.  *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (applying Rule 12(b)(6) standard to Rule 12(c) motion).

In deciding a Rule 12(c) motion, the Court may consider the complaint, as well as any documents incorporated by reference or attached to the complaint, such as the Policy and the Government Orders, upon which Plaintiff relies.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (finding that "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity" of the document).  Of course, the Court must disregard all allegations in the complaint that are contradicted by the Policy or Government Orders.  *See, e.g.*, *Yang v. Dar Al-Handash Consultants*, 250 Fed. App'x. 771, 772 (9th Cir. 2007) ("[A] court should not blindly accept the allegations in the pleadings as true if these allegations are contradicted by uncontested facts set forth in . . . exhibits to the nonmoving party's pleading.").

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 8**

B.    <u>**Oregon Courts Enforce Insurance Contracts as Written**</u>

Under Oregon law, interpretation of an insurance contract is a question of law.  *Ortiz v. State Farm Fire & Cas. Co.*, 260 P.3d 678, 679 (Or. App. 2011).  The insured has the initial burden of showing that a loss is covered by the policy.  *Uptown Market, LLC v. Ohio Sec. Ins. Co.*, 286 F. Supp. 3d 1160, 1165 (D. Or. 2018).  In construing insurance policies, the goal is to determine the intention of the parties from the terms of the policy, beginning with an examination of the plain meaning of its terms.  *Prot. Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp.*, 992 P.2d 479, 481 (Or. App. 1999).  "When the language of the [insurance] contract is not ambiguous, the policy is interpreted in accordance with its unambiguous terms."  *Safeco Ins. Co. v. Masood*, 330 P.3d 61, 64 (Or. App. 2014); *see also Bjugan v. State Farm Fire & Cas. Co.*, 969 F. Supp. 2d 1283, 1287 (D. Or. 2013) ("[W]here the contract unambiguously expresses the intent to provide coverage or to not provide coverage, the contract language is controlling.").  Moreover, the "policy must be viewed by its four corners and considered as a whole."  *N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 741 (Or. 2001) (quotation omitted).

IV.    <u>**ARGUMENT**</u>

The COVID-19 pandemic and measures implemented to slow its spread have significantly disrupted public health and businesses nationwide.  But no matter how extensive its reach and how sympathetic its victims, the pandemic can provide no basis to impose on insurers, like Continental Western, obligations for risks they never contractually undertook to cover or negate the plain and unambiguous terms of the policies they issued.  The plain terms of this Policy, including the essential element of "direct physical loss of or damage to" property, demonstrate that there is no coverage for Plaintiff's losses, as a matter of law.  *See French Laundry Partners, LP v. Hartford Fire Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 1640994, at *5

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 9**

(N.D. Cal. Apr. 27, 2021) ("While the Court acknowledges the havoc that the COVID-19 pandemic and consequent shelter-in-place orders have caused businesses throughout this country and the world, the Court cannot read an ambiguity into an insurance contract where none exists").

   A.   **Plaintiff Has Not Plausibly Alleged the Direct Physical Loss of or Damage to Property Required by the Policy**

        1.   **Plaintiff Has Alleged No Distinct, Demonstrable Alteration of Property as Required by Oregon Law**

Continental Western's Motion should be granted for the simple reason that Plaintiff has not plausibly alleged any "direct physical loss of or damage to" its property to trigger coverage under the Business Income, Extra Expense, and Extended Business Income provisions of the Policy.  Although Plaintiff alleges in conclusory fashion that it has suffered property loss or damage, the Amended Complaint does not recite any facts demonstrating that Plaintiff's property has been physically changed or altered in any way.  Rather, Plaintiff asserts only that it lost the ability to access and use its property for one particular purpose—on-site dining services.  *See* AC ¶¶ 45–49.  But mere loss of use is an economic harm; it does not equate to "direct physical loss of or damage to" property.  As this Court held in *Great Northern Insurance Co. v. Benjamin Franklin Federal Savings & Loan Ass'n*, "the inclusion of the terms 'direct' and 'physical' could only have been intended to exclude indirect, nonphysical losses."  793 F. Supp. 259, 263 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (table).  Under Oregon law, loss of use without some "distinct and demonstrable" physical alteration to property is insufficient for coverage under the Policy.  *See Columbiaknit, Inc. v. Affiliated FM Insurance Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999).

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 10**

In *Columbiaknit,* the insured owned a garment warehouse whose contents were exposed to high humidity and mold spores after rainwater entered the building.  *Id.* at *1.  The insured claimed that the property stored in the warehouse had suffered direct physical loss or damage merely as a result of this exposure.  Rejecting the insured's claims that the policy language was ambiguous, the court held that "[t]he mere adherence of molecules to porous surfaces, without more, does not equate [to] physical loss or damage" to the garments.  *Id.* at *7.  Instead, to show "direct physical loss of or damage to" the property, the insured needed to show that there had been "a distinct, demonstrable, physical alteration of the property."  *Id.* at *4, 7 (quotation omitted).  As the court noted, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct demonstrable, physical alteration of the property."  *Id.*at 4 (quoting 10 Couch on Ins. § 148:46 (3d ed.) (West 1998)).  Absent such physical alteration of the property, there was no coverage.  *Id.* at *7.

Similarly, in *Great Northern Insurance Company v. Benjamin Franklin Federal Savings and Loan Association*, the court held that a policy that required "direct physical loss or damage" to property did not cover the insured's economic losses.  793 F. Supp. at 261, 263.  The insured owned an office building that was found to contain asbestos requiring the tenant to vacate the premises; it sought coverage for the loss of use of its building and the anticipated cost of removing the asbestos.  *Id.* at 260-61.  The policy covered loss that "*result[ed] from a direct physical loss or damage by a Covered Cause of Loss*" and defined "Covered Cause of Loss" as "direct physical loss or damage."  *Id.* at 261 (emphasis in original).  The court found that there was no coverage because the property had not sustained a "direct physical loss," stating:

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 11**

> There is no evidence here of *physical* loss, direct or otherwise. *The building has remained physically intact and undamaged. The only loss is economic.* The policy, by its own terms, covers only direct physical loss. The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses.

*Id.* at 263; *see also Wyo. Sawmills, Inc. v. Transp. Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978) (en banc) (concluding that the inclusion of the word "physical" in an insurance policy "negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'"); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *8 (D. Or. June 18, 2002) (noting that the mere presence of mold in a house may not constitute a "direct and physical loss").

Here, Plaintiff fails to allege any facts indicating any "direct physical loss of or damage to" its property. Although the Amended Complaint repeatedly states in conclusory terms that Plaintiff has suffered such damage or loss, it is devoid of any factual allegations demonstrating that insured property was tangibly or physically altered in any way. *See Iqbal*, 556 U.S. at 679 (noting that "a legal conclusion couched as a factual allegation" is insufficient to satisfy federal pleading requirements). To the contrary, the restaurant was "physically intact and undamaged." *Great N. Ins. Co.*, 793 F. Supp. at 263. Nothing in the restaurant was stolen and every physical element of the restaurant, including chairs, tables, equipment and fixtures, remained unchanged. Moreover, Plaintiff was allowed to use its restaurant to prepare food for drive-through, carry-out and delivery, further underscoring that the restaurant was not physically or tangibly altered. Under these circumstances, where all Plaintiff has alleged is economic losses from mere loss of use, it has not plausibly pleaded direct physical loss of or damage, as required by the Policy.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 12**

2.    **The Overwhelming Majority of Courts Considering COVID-19 Business Income Claims Based on Similar Facts Have Ruled that There Is No Coverage**

Although Oregon courts have not decided this precise issue, the overwhelming majority of courts nationwide to consider business income claims stemming from COVID-19 have concluded that inability to use property for its intended purpose, as a result of the pandemic or government restrictions to curb the spread of the disease, does not satisfy the direct physical loss of or damage to property requirement under property policies.  Indeed, more than 200 decisions have been issued across the country, and that number is growing, finding in favor of insurers and dismissing COVID-19 coverage suits, based upon facts virtually identical to those presented here.  *See, e.g.*, *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1202 (D. Kan. 2020) ("The Court follows the majority of courts to consider identical policy language in the context of COVID-19 and holds that direct physical loss or damage to the property requires a tangible actual change to or intrusion on the covered property."); *Torgerson Props., Inc. v. Cont'l Cas. Co.*, __ F. Supp. 3d __, 2021 WL 615416, at *1 (D. Minn. Feb. 17, 2021) ("[t]he weight of authority is nearly unanimous that state orders restricting business operations because of the pandemic are not covered under" the direct physical loss or damage provision); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, __ F. Supp. 3d __, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021) ("courts across the country have held that coverage due to COVID-19 government shutdown orders does not exist where, as here, policyholders fail to plead facts showing physical property damage" (quotation and alterations omitted)); *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, __ F. Supp. 3d __, 2021 WL 37984, at *4 (E.D. Mo. Jan. 5, 2021) (finding that the insured's "contention that its losses were caused by government closure orders themselves – without any claim that its property was physically affected – is not

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 13**

enough to show 'direct physical loss'"); *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 42050, at *5 (S.D.W.V. Jan. 5, 2021) ("a regulatory shutdown order" alone does not constitute "physical loss or damage" such as would trigger coverage); *Gerleman Mgmt., Inc. v. Atl. States Ins. Co.*, __ F. Supp. 3d __, 2020 WL 8093577, at *5 (S.D. Iowa Dec. 11, 2021) ("[D]irect physical loss or damage requires tangible alteration of property and [] loss of use alone is insufficient."); *Cetta*, 2020 WL 7321405, at *6 (finding that allegations of "loss of use" do not constitute "direct physical loss of or damage to" property sufficient to trigger coverage).

More than 50 decisions from the Ninth Circuit alone have reached this same conclusion. For example, in *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828 (C.D. Cal. 2020), the court granted an insurer's motion to dismiss similar COVID-19-based claims under the same wording in the Policy here. The plaintiff argued that its inability to fully use its restaurant as a result of government orders satisfied this requirement. *Id.* at 836. The court rejected this argument, explaining that "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *Id.* at 835-36. Rather, the property must "undergo[] a 'distinct, demonstrable, physical alteration,'" and an insured cannot avoid the plain terms of insurance policies "by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *Id.* at 836;[3] *see also Motiv Grp., Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-09368-ODW

---

[3] As one court has noted, "every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or make the business less profitable do not themselves cause or constitute 'direct physical loss of or damage to' the insured property." *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, No. 20-CV-03674-BLF, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021); *see Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-cv-01129-H-MDD, 2021 WL 242979, at *4-5 (S.D. Cal. Jan. 22, 2021) ("Courts applying California law have all but universally rejected" contentions that the temporary loss of function of a property constitutes direct physical loss); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 1233,

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 14

(Ex), 2021 WL 1240779, at *3 (C.D. Cal. Apr. 1, 2021) ("[L]osses from inability to use property

do not amount to 'direct physical loss of or damage to property' within the ordinary and popular

meaning of the phrase. . . . [O]nly a 'distinct, demonstrable, physical alteration' of property will

amount to physical loss or damage that may trigger coverage."); *Plan Check Downtown III, LLC*

*v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231 (C.D. Cal. 2020) (noting that it would be "a

sweeping expansion of insurance coverage" to treat "anything that interferes with the permitted

physical activities on a property," including "any regulation that limits a business's operations,"

as a "direct physical loss."); *Circus Circus LV, LP v. AIG Spec. Ins. Co.*, __ F. Supp. 3d __, 2021

WL 769660, at *4 (D. Nev. Feb. 26, 2021) (finding that "direct physical loss" "requires the

plaintiff to allege a permanent 'loss' or dispossession from the property"); *Levy Ad Grp., Inc. v.*

*Chubb Corp.*, __ F. Supp. 3d __, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) (agreeing with

the "growing number of courts across the country [that] have reasoned that these 'economic

losses' caused by COVID-19 closures . . . do not trigger policy coverage predicated on direct

---

1239 (C.D. Cal. 2020) ("Plaintiffs cannot state a legally cognizable harm based on the temporary
loss of use of property alleged here"); *Baker v. Or. Mut. Ins. Co.*, No. 20-cv-05467-LB, 2021
WL 1145882, at *2 (N.D. Cal. Mar. 25, 2021) (agreeing with "the majority view" that "'direct
physical loss' provisions . . . do not cover lost business income or expenses resulting from
closure orders like the one here"); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co.*, No. 20-CV-
04783-SK, 2021 WL 141180, at *3 (N.D. Cal. Jan. 13, 2021) ("direct physical loss of property
does not include the temporary loss of use due to the governmental Stay-at-Home Orders");
*O'Brien Sales & Mktg. Inc. v. Transp. Ins. Co.*, No. 20-cv-02951, 2021 WL 105772, at *3 (N.D.
Cal. Jan. 12, 2021) (loss of use of property from governmental orders unaccompanied by
"distinct, demonstrable physical alteration of property insufficient" to demonstrate direct
physical loss of property); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, No. 20-cv-06158-LB,
2021 WL 25048, at *2-3 (N.D. Cal. Jan. 4, 2021) ("The majority view—including in this
district—is that 'direct physical loss' provisions . . . do not cover lost business income or
expenses resulting from closure orders"); *Mortar & Pestle Corp. v. Atain Spec. Ins. Co.*, No. 20-
cv-03461, 2020 WL 7495180, at *3 (N.D. Cal. Dec. 21, 2020) (rejecting contention that mere
loss of use of tangible property that is not physically injured can trigger coverage).

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 15**

physical loss or damage"); *B Street Grill & Bar LLC. v. Cincinnati Ins. Co.*, __ F. Supp. 3d __,
2021 WL 857361 (D. Ariz. Mar. 8, 2021) ("[T]he policy requires actual physical damage to
Plaintiffs' property for coverage to apply.").

Similarly, courts across the country adjudicating suits from restaurants alleging COVID-
19 related business income losses, like Sero, have also almost uniformly rejected such claims.
*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289 (N.D. Ga. 2020), is
illustrative of this trend.  There, the court rejected a restaurant's contention that its inability to
use its dining space as a result of an executive order addressing the pandemic constituted a
"physical loss of property under the policy."  *Id.* at 1294-95.  As the court observed, the order
"did not represent an external event that changed the insured property.  Every physical element
of the dining room—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—
underwent no physical change as a result of the Order."  *Id.* at 1295.  Providing coverage under
these circumstances, the court concluded, not only would violate the policy's requirement of
physical alteration to the property, it would "exceed[] any reasonable bounds of possible
construction, pushing the words [of the policy] individually and collectively beyond what any
plain meaning can support."  *Id.* at 1294.[4]

---

[4] *See also Steiner Steakhouse, LLC v. AMCO Ins. Co.*, No. 1:20-cv-00858-LY, at *7-8 (W.D.
Tex. Dec. 30, 2020) (finding that a restaurant's claim that it lost business during the COVID-19
pandemic because indoor dining was suspended was insufficient to trigger coverage); *Sun
Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No. 1:20-cv-21827-
GAYLES/OTAZO-REYES, 2020 WL 7699672, at *3 (S.D. Fla. Dec. 28, 2020) (rejecting a
restaurant's argument that "a loss of functionality or intended use constitutes physical loss or
damage"); *Mortar & Pestle*, 2020 WL 7495180, at 3 (finding that allegations of loss of use of a
restaurant are insufficient to trigger coverage); *Newchops Rest. Comcast LLC v. Admiral Indem.
Co.*, __ F. Supp. 3d __, 2020 WL 7395153 (E.D. Pa. Dec. 17, 2020) (finding that there was no
coverage where "[t]here was no physical damage to the insured or others' properties alleged in"
the plaintiffs' complaints); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, __ F.
Supp. 3d __, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (finding a restaurant's conclusory
allegations of physical loss or damage due to the COVID-19 pandemic were "insufficient as a

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 16**

Likewise, in *Real Hosp., LLC v. Travelers Cas. Inc. of Am.*, 499 F. Supp. 3d 288, 295 (S.D. Miss. 2020), a Mississippi district court rejected a restaurant's claims that the loss of in-person dining as a result of government closure orders designed to curb the spread of COVID-19 constituted direct physical loss of or damage to property. As the court noted, the policy was "a commercial property policy, not a stand-alone business interruption policy—Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are." *Id.* at 296. Accordingly, the court had no trouble concluding that the insured's inability to use its dining room as a result of the pandemic and resulting government closure orders was insufficient to demonstrate direct physical loss or damage. *Id.; see also Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 5:20-cv-06165-JMG, 2021 WL 1945713, at *7 (E.D. Pa. May 14, 2021) ("Plaintiff's inability to use their properties as dine-in restaurants do not satisfy [the direct physical loss requirement] because their property remained otherwise functional and sustained no structural harm").

A decision issued by Judge Rothstein from the Western District of Washington within the last month, concerning at least 10 separate consolidated complaints for COVID-19 business income losses, including one filed against a Continental Western affiliate, is particularly instructive. *See Nguyen*, 2021 WL 2184878, at *1. The plaintiffs in that case (consisting of "hundreds of businesses from across Western Washington State" including restaurants, hotels, dental practices, medical practices, coffee shops and even the Seattle Symphony) made similar allegations to those made here, namely that an alleged inability to use the insureds' property for

---

matter of law to establish coverage").

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 17**

its intended purpose was sufficient to constitute "direct physical loss of or damage to property."[5]
*Id.* at *1, 3.  The court emphatically rejected this proposition in a thorough 75-page ruling.  As to
property damage, the court rejected the notion that COVID-19 could contaminate and thereby
alter the physical surfaces of property.  *Id.* at *10.  Rather, the court found that "COVID-19 hurts
people, not property, as the pandemic impacts human health and human behavior, not physical
structures."  *Id.* (quotations omitted).  Indeed, as the court observed, "all that is needed to
decontaminate is to 'wipe the virus off the surface with disinfectant,' attesting to the fact that
there is no underlying damage."  *Id.* (alterations omitted).

As for "direct physical loss," the court determined that "in its common usage, 'loss'
means that the alleged peril must set in motion events which cause the inability to physically
own or manipulate the property, such as theft or total destruction."  *Id.*  Thus, the court held,
"direct physical loss does not cover . . .purely economic losses," and "economic business
impairments caused by COVID-19 safety orders *do not fall within the scope of coverage*."  *Id.* at
*11 (quotations omitted, emphasis in original).  Although government orders may have "limited
the uses of property by preventing certain indoor activities previously conducted on the
premises," "they did not cause dispossession of the buildings, chairs, dental tools, etc.  As other

---

[5] More than 30 individual COVID-19 insurance coverage complaints filed in the Western
District of Washington were transferred to Judge Rothstein and were thereafter consolidated by
insurer group into 10 consolidated actions.  *See Nguyen*, 2021 WL 2184878, at *5.  Over the
course of eight months, the parties filed hundreds of pages of briefs on the relevant coverage
issues. *Id.* at *6. An affiliate of Continental Western (Tri-State Insurance Company of
Minnesota) was a defendant in the case and filed a motion to dismiss, which was granted by
Judge Rothstein. *Id.* at *36-38. The policy language at issue was exactly the same as the Policy
language in this case. *Id.* at *36.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 18**

courts have adeptly summarized, the 'property did not change. The world around it did.'" *Id.* (citation omitted).

Notably, applying these same principles, courts have routinely granted motions for judgment on the pleadings to insurers when, as here, policyholders alleged loss of use of property as a result of government closure orders to trigger coverage and failed to plausibly allege distinct, demonstrable physical alteration to property. *See e.g. Colgan v. Sentinel Ins. Co.*, __ F. Supp. 3d __, 2021 WL 472964, at *3 (N.D. Cal. Jan. 26, 2021) (granting motion for judgment on the pleadings and finding that loss of access to or use of the property was insufficient to constitute direct physical loss or damage without a showing of a "distinct, demonstrable, physical alteration of the property or a physical change in the condition of the property to demonstrate direct physical loss." (quotations omitted)); *Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*, 503 F. Supp. 3d 884 (S.D. Iowa 2020) (granting insurer's motion for judgment on the pleadings and concluding that, "[a]lthough Plaintiffs attempt to paint their losses as physical, they have essentially pleaded loss of use, which is insufficient to establish a direct physical loss").[6]

The breadth and uniformity of the nationwide COVID-19 rulings demonstrate the fundamental flaws in Plaintiff's claims. As in all of the COVID-19 cases cited above, Plaintiff has not alleged that any of its property was physically altered. There was no fire, hurricane, theft

---

[6] *See also Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, No. CV 20-4647-GW-MAAx, 2020 WL 7350413, at *4 (C.D. Cal. Dec. 3, 2020) (granting insurer's motion for judgment on the pleadings because the insured "has not suffered any 'direct physical loss of or physical damage to' its property"); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1400891 (D. Md. Apr. 14, 2021) (finding that "direct physical loss or damage" does not include loss of use and granting insurer's Rule 12(c) motion).

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 19**

of equipment or other event that physically altered the property. Rather, Plaintiff's real complaint is that it partially lost the use of its premises because of the Government Orders which prohibited dine-in services to mitigate the spread of the virus. But this allegation is insufficient to establish an entitlement to coverage. Judgment on the pleadings should be entered in favor of Continental Western on this threshold issue.

### 3. Plaintiff's Allegations that Persons Infected with COVID-19 Likely Entered its Restaurant or that the Coronavirus Likely Infected Surfaces, Air or People There Are Insufficient to Trigger Coverage

No doubt recognizing that loss of use of its dining room as a result of the Government Orders falls far short of satisfying coverage requirements, Plaintiff asserts new allegations in its Amended Complaint, which purport to offer an alternative ground for establishing coverage. Specifically, Plaintiff claims that the "Coronavirus and its pernicious spread created inherently dangerous conditions where Beast and property within it was *at immediate and imminent risk of exposure to the Coronavirus.* This caused Beast to suspend operations and lose access to its premises." AC ¶ 42 (emphasis added). Further, Plaintiff claims that "it is *likely* that customers, employees, vendors, or other persons infected with or carrying Coronavirus particles entered Beast, or that Coronavirus otherwise infected surfaces, air, or people at Beast. This caused physical damage to or loss of property" *Id.* ¶ 43 (emphasis added).

But these newfound allegations, not made in the original Complaint filed a year ago, are wholly insufficient to satisfy the direct physical loss or damage requirement. First, and foremost, the Amended Complaint nowhere alleges that *the Coronavirus was actually present* on Plaintiff's property at any time and, thus, the allegations of contamination amount to sheer conjecture at best. Courts have routinely rejected similar claims concerning the "likely"

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 20**

presence of the virus on insured property as entirely speculative, even at the motion to dismiss stage.  In *Promotional Headwear International v. Cincinnati Insurance Co.*, for example, the court held that the insured's similar "allegation that the virus *likely* contaminated its property fails to raise a 'right of relief above the speculative level.'"  504 F. Supp. 3d at 1203 (quoting *Twombly*, 550 U.S. at 555) (emphasis added).  Nor did the fact that there were known infections in the county in which the insured's business was located, satisfy the requisite pleading requirements.  As the court noted, "[t]o accept Plaintiff's conclusory assertion would be to accept the proposition that any business located in a community with COVID-19 infections was likely contaminated with the virus.  The Court declines to accept this speculative assertion, even at the motion to dismiss stage."  *Id.*

Other courts are in accord and have held that allegations of "imminent threats of contamination" by the Coronavirus, or the "likely presence of COVID-19 on the property" in complaints do not plausibly allege direct physical loss or damage. *See Johnson v. Hartford Fin. Servs. Grp., Inc.*, ___ F. Supp. 3d ___, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021) (dismissing as conjecture and speculation allegations that "the exceedingly high number of COVID-19 cases in Georgia[,] [] ease of person-to-person transmission" and "exponential growth of cases present in . . . this district" are enough to establish that COVID-19 was on the insured's premises); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. 20-10167 (SDW) (LDW), 2021 WL 1904739, at *3 n.6 (D.N.J. May 12, 2021) (declining "to judicially notice or artificially presume that COVID-19 or the Virus that causes it were present 'everywhere,' including at all of Plaintiff's covered locations"); *Café Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, ___ F. Supp. 3d ___, 2021 WL 601880, at *6 (D.N.M. Feb. 16, 2021) (rejecting "conclusory argument that the widespread existence of

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 21**

the virus locally necessarily makes it 'reasonable' to infer that the virus was present on the premises").[7]

Second, even the presence of COVID-19 on the property would not be sufficient to trigger coverage in any event.  As Oregon courts have squarely held, "[t]he mere adherence of molecules to porous surfaces, without more, does not equate [to] physical loss or damage." *Columbiaknit*, 1999 WL 619100, at *7.  Nor would the presence of the coronavirus effect a "distinct, demonstrable, physical alteration of the property." *Id.* at *4.  Courts around the country, including in the Ninth Circuit, have rejected this very proposition, finding that the presence of COVID-19 in an insured's premises does not cause physical loss of or damage to property.  This is particularly so, since the virus' presence can be eliminated by "routine cleaning and disinfecting" and an item that "merely needs to be cleaned has not suffered" a direct physical loss.  *Food for Thought*, 2021 WL 860345, at *5; see also *Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*, __ F. Supp. 3d __, 2021 WL 389215, at *7 (S.D. Cal. Feb. 3, 2021) ("[T]he Court does not find that the presence of COVID-19 qualifies as physical damage to property

---

[7] *See also Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, __ F. Supp. 3d __, 2021 WL 860345, at *5 (S.D.N.Y. Mar. 6, 2021) (rejecting speculation that virus was present at the plaintiff's business based on Mayor DeBlasio's statements that the "virus physically is causing property loss and damage"); *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 663675, at *7 (N.D. Ohio Feb. 19, 2021) (allegations based on prevalence of virus in northeast Ohio were "insufficient under the *Twombly-Iqbal* analysis"); *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, __ F. Supp. 3d __, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) (rejecting allegations that virus was present at retail store where the plaintiff merely extrapolated from the existence of confirmed cases in Houston at the time that the store closed due to government orders); *Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 972878, at *7 (W.D. Tex. Jan. 21, 2021) (speculation that "virus could have been present because of its prevalence in Austin and Dallas" was insufficient to state a claim that the virus damaged the plaintiff's property).

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 22**

because the virus harms human beings, not property."); *Baker v. Or. Mut. Ins. Co.*, No. 20-cv-05467-LB, 2021 WL 1145882, at *3 (N.D. Cal. Mar. 25, 2021) (dismissing allegations that the presence of COVID-19 amounted to "physical loss or damage" to insured's restaurant); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) (denying motion to amend complaint to add "speculative allegations that the COVID-19 virus, or individuals infected by the virus, likely had entered Plaintiff's premises" because the presence of the virus or of individuals with the virus at the insured's premises "do not constitute direct physical losses of or damage to property"); *see also Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*, No. 4:20-CV-1249 RLW, 2021 WL 1889866, at *6 (E.D. Mo. May 11, 2021) ("Plaintiffs' allegation that the COVID-19 virus was on the premises or that there was a person with COVID-19 on the premises is insufficient to support a claim of physical loss or damage under the Policy."); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021) (denying business interruption claim based on presence of COVID-19 because virus particles do not cause physical loss or damage to property); *Promotional Headwear Int'l*, 504 F. Supp. 3d at 1203 ("[E]ven assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage.").

### 4.    The Policy as a Whole Makes Clear that Loss of Use of Property Does Not Constitute Direct Physical Loss

Under Oregon law, an insurance policy must be read "by its four corners and considered as a whole." *N. Pac. Ins. Co.*, 22 P.3d at 741.  "Courts interpreting the language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'"  *Flores v. Barr*, 934 F. 3d 910, 915 (9th Cir.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 23**

2019) (citations omitted); *see also Hoffman Constr. Co. v. Fred S. James & Co.*, 836 P.2d 703, 707 (Or. 1992) ("We assume that parties to an insurance contract do not create meaningless provisions."). Here, other provisions in the Policy further support the conclusion that "direct physical loss of or damage to" property requires a physical alteration to property, which is not satisfied here, and not loss of use.

The Business Income, Extra Expense and Extended Business Income Coverage apply only during a "period of restoration," which ends on the earlier of the date when the business is resumed at a new location or is "*repaired, rebuilt or replaced*." Policy at 131 (emphasis added). "The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014); *see also Baker v. Or. Mut. Ins. Co.*, No. 20-cv-05467-LB, 2021 WL 24841 at *3 (N.D. Cal. Jan. 4, 2021) ("The end date for the period of restoration— when the property is repaired, rebuilt or replaced—also shows that the damage covered by the policy is physical."). As innumerable courts have held, if loss of use of property—which does not necessitate repair, rebuilding, or replacement—was all that was required to trigger coverage, the definition of "period of restoration" would be rendered meaningless. *See, e.g.*, *Kevin Barry Fine Art*, 2021 WL 141180, at *5 ("Interpreting direct physical loss of property to include . . . loss of use would rend[er] the language 'period of restoration' meaningless."); *Michael Cetta*, 2020 WL 7321405, at * 7 ("The idea that the premises will be 'repaired, rebuilt or replaced' suggests the occurrence of material harm that then requires a physical fix"; to read the policy to include coverage for "loss of use" would render the potential end dates of the "'period of restoration' provision meaningless"); *Santo's Italian Café LLC v. Acuity Ins. Co.*, __ F. Supp. 3d __, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) (concluding that coverage for loss of

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 24**

use "would render large parts of the 'period of restoration' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced"); *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*, __ F. Supp. 3d __, 2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020) (the "period of restoration" definition "informs that the loss or damage to the property must be physical affecting the structure of the property").

In short, Plaintiff has not —and cannot—plausibly allege the "direct physical loss of or damage to" its premises necessary to trigger Business Income, Extended Business Income or Extra Expense coverage under the Policy.

### B.     There Is No Coverage Under the Policy's Civil Authority Provision

Under the Civil Authority provisions of the Policy, Plaintiff must plausibly allege that: (1) the action of civil authority was issued as a result of "damage" to property not more than one mile from the insured premises caused by a Covered Cause of Loss and the "action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage"; and (2) the action of civil authority "prohibits access" to the insured premises.  Policy at 124.  Plaintiff falls far short of plausibly alleging these prerequisites for coverage.

### 1.     Plaintiff Has Not Plausibly Alleged that the Government Orders Were Issued as a Result of Damage to Property Within One Mile of the Insured Premises

The failure to plausibly allege that the Government Orders were issued as a result of damage to property within one mile of the insured premises and in response to dangerous physical conditions resulting from the damage is fatal to Plaintiff's Civil Authority claims. Indeed, "without a nexus between the issuance of the civil authority order and the damage to an adjacent property, there is no coverage." *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.*

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 25**

*Co.*, 440 F. Supp. 3d 520, 529 (D.S.C. 2020); *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636

F.3d 683, 687 (5th Cir. 2011) (noting that Civil Authority provisions require "proof of a causal

link between prior damage and the civil authority action"); *Assocs. in Periodontics, PLC v.

Cincinnati Ins. Co.*, No. 2:20-cv-171, 2021 WL 1976404, at *4 (D. Vt. May 18, 2021) (agreeing

with courts nationwide "that although a civil authority order mandated a business closure, the

insured must still show that the order was related to physical damage").

    Even a cursory review of the Amended Complaint shows that Plaintiff does not allege

any physical damage at any specifically identified location near its property.  Instead, Plaintiff

makes conclusory allegations that the Government Orders "were issued as a result of physical

loss, physical damage, and dangerous physical conditions occurring in properties within one mile

of Beast and all around cities and business districts," AC ¶ 66, and that "the street on which

Beast is located, and the buildings and objects in and around it, became a breeding ground for the

disease," *id.* ¶ 65.  Of course, the mere presence of the COVID-19 virus on property does not, in

and of itself, constitute property damage.  *See supra* Section IV.A.3.

    More fundamentally for purposes of Civil Authority coverage, vague references to the

presence of the virus within the vicinity of Plaintiff's premises are not sufficient to trigger Civil

Authority coverage.  *See Deer Mountain Inn LLC v. Union Ins. Co.*, No. 1:20-cv-0984

(BKS/DJS), 2021 WL 2076218, at *11 (N.D. N.Y. May 24, 2021) (finding insured's

"generalities about the spread of COVID-19 and its impact on the business community, while

failing to point to any damage to a specific property within a mile of Plaintiff's business that

gave rise to the . . . Closure Order", insufficient to plead entitlement to Civil Authority coverage)

(collecting cases); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, __ F. Supp. 3d __, 2020 WL

7889047, at *4 (N.D. Ill. Dec. 22, 2020) (denying coverage under the Civil Authority provision

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 26**

because the plaintiff did not "allege any damage to any property in their vicinity"); *Gerleman Mgmt.*, 2020 WL 809357, at *6 (rejecting claim for Civil Authority coverage because plaintiffs "have not alleged damage to another property"); *Steiner Steakhouse*, 2020 WL 8879041, at *4 (finding no Civil Authority coverage where plaintiff did not allege damage to a specific neighboring property, but instead alleged "the *general threat* of viral transmission at any location (including its own restaurant) where people congregate").

The decision in *10E, LLC*, 483 F. Supp. 3d 828, is directly on point. There, the insured attempted to satisfy the civil authority damage requirement in much the same fashion Plaintiff does here, alleging that "public health restrictions" were "based on . . . evidence of physical damage to property" "in the immediate area of the Insured Property." *Id.* at 837. The court found this effort "fatally conclusory," noting that the "allegations do no more than paraphrase the language of the Policy without specifying facts that could support recovery under the Policy. These allegations are thus 'conclusory allegations of law' that plainly cannot survive a Rule 12(b)(6) challenge." *Id.*; *see also Barbizon School of S.F., Inc. v. Sentinel Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1222161, at *10 (N.D. Cal. Mar. 31, 2021) (allegations of "pervasive presence of [coronavirus] in the cities where the Insured Locations are located" are "not enough" and "cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged" (quotations omitted)). Here too, Plaintiff merely "paraphrase[s] the language of the Policy without specifying facts that could support recovery under the Policy," *see 10E, LLC*, 483 F. Supp. 3d at 837, and its claim for Civil Authority coverage plainly cannot survive.

Moreover, the Government Orders themselves make clear that they were issued to prevent or limit the spread of COVID-19, not "as a result of the damage" to non-insured property

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 27**

within one mile of the insured premises.  Executive Order 20-07 explicitly states that "[t]he

purpose of this Executive order is to reduce person-to-person interaction with the goal of

restricting transmission."  AC, Ex. 1 at 3 ("In order to slow the spread of COVID-19, to protect

Oregonians who are the highest risk for contracting the disease, and to help avoid overwhelming

local and regional healthcare capacity, I find that immediate implementation of social distancing

and community mitigation measures are necessary.").  Likewise, Executive Order 20-14

references the same considerations as well as the "ongoing public health emergency" as

justification for the extension of Executive Order 20-07.  AC, Ex. 2 at 2.  Neither of the

Government Orders references property damage to any particular property, much less damage to

property within one mile of Beast, as the impetus for the Government Orders.

The Courts uniformly have ruled that there is no Civil Authority coverage for COVID-19

claims where governmental orders were issued as precautionary measures to prevent the spread

of COVID-19 and not because of actual damage to surrounding property.  *See, e.g., Deer*

*Mountain,* 2021 WL 2076218, at *11 (finding that government order "issued in response to the

spread of COVID-19 throughout New York State with the goal of limiting future transmission of

the virus statewide, does not fall within the scope of the Civil Authority Provision"); *Kamakura,*

*LLC v. Greater N.Y. Mut. Ins. Co.,* __ F. Supp. 3d __, 2021 WL 1171630, at *11 (D. Mass. Mar.

9, 2021) ("Because the orders were intended to minimize future damage rather than to respond to

past damage, the complaint fails to state a claim for Civil Authority coverage."); *Baker,* 2021

WL 1145882, at *5 (holding that plaintiff does not plausibly plead civil authority coverage

where "shutdown orders were issued to stop the spread of COVID-19 and were not about loss of

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 28**

or damage to property").[8]

      Plaintiff does not plausibly claim that the Government Orders were issued in response to any actual, direct physical damage to surrounding property, much less property within one mile of Beast. Continental Western's Motion must be granted.[9]

      **2.**    **The Government Orders Do Not Prohibit Access to the Insured's Premises**

      Plaintiff also has not plausibly alleged that access to the insured premises was prohibited"

---

[8] *See also Mortar & Pestle*, 2020 WL 74951480, at *5 (no civil authority coverage when "it is apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property"); *Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co.*, No. 3:20-cv-1230-AJB-RBB, 2021 WL 1226447, at *4 (S.D. Cal. Mar. 30, 2021) (rejecting civil authority claim where closure orders were issued as "general precautionary measure to control the spread of the virus" and orders failed to cite "presence of COVID-19 in the surrounding areas of Plaintiff's business . . . as the impetus for the Closure Orders" (quotation omitted)); *Pappy's Barber Shops*, 491 F. Supp. 3d at 740 (no civil authority coverage where orders "were 'precautionary measures taken by the state to prevent the spread of COVID-19 in the future'" (quotation omitted)); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 487 F. Supp. 3d 834, 844 (N.D. Cal. 2020) ("Because the orders were preventative . . . the complaint does not establish the requisite causal link between prior property damage and the government's closure order.").

[9] The Civil Authority provisions make clear that they apply solely when access to insured property is prohibited by order of civil authority as a result of damage to surrounding property caused by a "Covered Cause of Loss," which is defined under the Policy as "direct physical loss." Policy at 134. For the reasons addressed *supra*, COVID-19 cannot constitute a "Covered Cause of Loss" under the Policy because it did not cause a distinct, demonstrable alteration of Plaintiff's property. *See supra* Section IV.A.3. The Government Orders also cannot qualify as direct physical loss. As the court observed in *Tralom, Inc. v. Beazley USA Servs., Inc.*, "the Government Orders cannot be both the *cause* of the physical loss and the *result* of the physical loss." 2020 WL 8620224, at *6 (C.D. Cal. 2020) (emphasis added); *see Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, 488 F. Supp. 3d 904, 908 (N.D. Cal. 2020) (labeling as "[n]onsense" Plaintiff's theory that the "Closure Orders (the orders of a civil authority) were issued as the direct result of the Closure Orders, a claimed Covered Cause of Loss" because "[a]t bottom, the Closure Orders cannot possibly be the same as the Covered Cause of Loss"); *Hajer v. Ohio Sec. Ins. Co.*, 505 F. Supp. 3d 646, 652 (E.D. Tex. 2020) (rejecting the argument that COVID-19 Closure Orders caused "damage" for purposes of the civil authority provision because "[t]he provision requires the physical damage to prompt the act of civil authority, not the other way around").

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 29**

within the meaning of the Civil Authority coverage provisions.  Courts have ruled that an action of civil authority that limits or prohibits operations of a business is not sufficient to trigger civil authority coverage.  Rather, access to the insured premises must be physically impossible, which is not the case here. To the contrary, Plaintiff's business was allowed to remain open and operational to provide restaurant services, like carry-out, drive through and delivery.  Access to Beast was not prohibited.

The court considered this question in *Pappy's Barber Shops, Inc. v. Farmers Group*, 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020).  There, the court distinguished between orders prohibiting *access* to insured premises and orders temporarily restricting permitted *activity* at the insured premises.  *Id.*  As the court noted, the "Policy insures property, in this case Plaintiff's property and physical places of business, and not Plaintiff's business itself.  To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's [sic] are simply prohibited from operating their business."  *Id.*  As the California government orders only restricted the operation of Plaintiff's business and did not prohibit access to the property, the court found that civil authority was not triggered.  *Id.*; *see also B Street Grill*, 2021 WL 857361, at *6 (finding no civil authority coverage where Arizona's COVID-19 order "did not prohibit access to the insured premises, but merely stated that on-site dining was prohibited"); *Wellness Eatery*, 2021 WL 389215, at *7 (finding no Civil Authority coverage for an insured restaurant where California's COVID-19 orders allowed restaurants to remain open and allowed patrons to access the property for take-out and off-site consumption); *1210 McGavock St.*, 2020 WL 7641184, at *10 ("The most natural reading of 'access,' in this context, is physical access, not simply being closed to the public.  The plaintiff does not allege that it was ever physically unable to access the restaurant.").

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 30**

Here, the Government Orders did not prohibit Plaintiff's ability to access its insured premises.  They prohibited restaurants from offering on-site dining services, but allowed them to remain open and serve food or drink for off-premises consumption.  AC, Ex. 1 at 3.  They explicitly allowed restaurant staff (and patrons) to access and utilize restaurant premises, provided that restaurants implemented social distancing protocols for staff "whenever possible." *Id.*  Thus, Plaintiff's allegations that the prohibition of on-site dining amounted to a prohibition of its ability to access, use, or operate its restaurant are plainly contradicted by the Government Orders themselves.[10]  Because Plaintiff was not, in fact, prohibited from accessing its premises, Plaintiff cannot invoke the Policy's Civil Authority coverage.

**C.      Plaintiff's Claims Are Also Barred by the Ordinance or Law, Acts or Decisions and Loss of Use Exclusions**

To the extent Plaintiff persists in arguing that loss of its dining room as a result of the Government Orders constitutes direct physical loss of or damage to property under the Policy caused by a Covered Cause of Loss, such claims do not trigger coverage for the additional reason that they are excluded based upon three separate Policy exclusions.

First, the Policy's Ordinance or Law Exclusion bars coverage for "loss or damage caused directly or indirectly by . . . *[t]he enforcement of or compliance with any ordinance or law* . . . *[r]egulating the* construction, *use* or repair *of any property*."  Policy at 134 (emphasis added).  Inasmuch as the Government Orders undoubtedly constitute an ordinance or law regulating the use of property, Plaintiff's claims would be excluded.  *See, e.g.*, *Isaac's Deli,* 2021 WL 1945713, at *5 (holding that ordinance or law exclusion precluded a restaurant from asserting COVID-19);

---

[10] As previously stated, a court need not "blindly accept the allegations in the pleadings as true if these allegations are contradicted by uncontested facts set forth in . . . exhibits to the nonmoving party's pleading."  *Yang*, 250 Fed. App'x. at 772.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**Page 31**

*Newchops Rest.*, 2020 WL 7395153, at *7 (identical ordinance or law exclusion "unequivocal[ly]" excluded coverage where closure orders "regulat[ed] the use of property and ha[d] the force of law"); *Family Tacos, LLC v. Auto Owners Ins. Co.*, __ F. Supp. 3d __, 2021 WL 615307, at *5 (N.D. Ohio Feb. 17, 2021) ("[W]here the loss arises from an ordinance or law . . . the policy does not provide coverage.").

Second, the Policy's Acts or Decisions Exclusion similarly provides that Continental Western "will not pay for loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." Policy at 137.  This exclusion likewise has been held to preclude COVID-19 business income claims based upon similar Government Orders, both in the Ninth Circuit and elsewhere.  *See FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, __ F. Supp. 3d __, 2021 WL 857004, at *6 (S.D. Cal. Mar. 8, 2021) (finding that the plain language of an identical Acts or Decisions Exclusion precluded coverage where alleged losses stemmed from governmental closure orders); *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, __ F. Supp. 3d __, 2021 WL 1210000, at *7 (E.D. Pa. Mar. 31, 2021) (virtually identical acts or decisions exclusion was "unequivocal" and made clear that insurer would not pay for loss or damage caused by "decisions by state and local governments regulating business operations at the insured property"); *Whiskey River on Vintage*, 503 F. Supp. 3d at 907 (same).

Third, the Policy expressly excludes from coverage losses "caused by or resulting from . . . [d]elay, *loss of use* or loss of market."  Policy at 136 (emphasis added).  Courts have held that this provision "suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force."  *See Mortar & Pestle*, 2020 WL 7495180, at *4; *Mudpie, Inc.*, 487 F. Supp. 3d at 842–43.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 32**

### D.    Judgment Should be Entered on All Claims in the Amended Complaint

Because there is no coverage for Plaintiff's claims under the Policy, Continental Western is entitled to judgment on all claims for relief in the Amended Complaint.  Plaintiff's claims for breach of contract and declaratory judgment fail because there is no coverage under the Policy. *See Bush v. State Farm Fire & Cas. Co.*, 124 F. Supp. 2d 1203, 1206-1207 (D. Or. 2000) (entering summary judgment in favor of the insurer on a breach of contract claim given the absence of coverage); *Union Station Assocs. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) (dismissing claims for declaratory judgment because they "can[not] stand in the absence of a substantive cause of action"); *Nguyen*, 2021 WL 2184878 at *16 (dismissing breach of contract and declaratory judgment claims in the absence of coverage).

Plaintiff's claim for breach of the covenant of good faith and fair dealing also must be rejected as Continental Western did not wrongfully or unreasonably deny coverage.  *See Veloz v. Foremost Ins. Co. Grand Rapids, Mich.*, 306 F. Supp. 3d 1271, 1281 (D. Or. 2018) (finding that there was no breach of the duty of good faith where an insurer's policy interpretation was plausible); *Marshall v. Wells Cap. Mgmt., Inc.*, No. 07-309-HU, 2007 WL 4565164, at *9 (D. Or. Dec. 19, 2007) ("Conduct consistent with the terms of the contract cannot serve as the basis of a claim of violation of the duty of good faith"); *Nguyen*, 2021 WL 2184878, at *17 (dismissing bad faith claims because denial of coverage was reasonable).

Lastly, Plaintiff's claim under the Washington Consumer Protection Act ("CPA") also must be dismissed.  Even assuming arguendo (which Continental Western disputes) that the CPA applies to this action between two non-residents of Washington over a Policy issued and insuring property outside of Washington, there are no plausible allegations that would support a claim

under the statute in any event.[11]  As Judge Rothstein decided in rejecting similar CPA claims in

*Nguyen,* no claim lies under the CPA when the insurer correctly concludes that there is no

coverage under the policy.  *See Nguyen,* 2021 WL 2184878, at *17 ("[S]ince the Court has found

that COVID-19 does not cause physical loss or damage, denial of coverage on these grounds was

reasonable.  Therefore, any claims . . . under the [Washington CPA] . . . premised on these

grounds must fail."); *see also Hanson v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1110,

1117 (W.D. Wash. 2017) ("[B]oth bad faith and CPA violations turn on the reasonableness of the

insurer's actions.").  Moreover, to the extent Plaintiff claims that Continental Western's

investigation of the claim was somehow deficient—a contention which Continental Western also

disputes—any further investigation would have been futile and cannot provide a predicate to

resurrect a faulty CPA claim.  As Washington courts have held, where, as here, the coverage

determination is based upon the plain terms of the Policy and further investigation would have

no impact on that investigation, the insured cannot be heard to complain that the investigation

was somehow lacking.  *See, e.g.*, *Nguyen,* 2021 WL 2184878, at *17 (finding that "[t]here was

no need for factual investigations" because the "denial[] of coverage [was] based on policy

interpretations") (internal citation omitted).

Because Plaintiff's individual claims do not survive, Defendant is entitled to judgment on

the putative class claims as well.  *See Tucker v. Intel Corp.*, 141 Fed. App'x. 524, 525 (9th Cir.

---

[11] It is questionable (at a minimum) whether the Washington CPA even applies to Plaintiff's claims. *See Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 977 (9th Cir. 2016) (finding that the CPA did not apply to a suit that was between two non-Washington residents and that did not implicate trade in Washington); *see also Great American Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 461 F. Supp. 1098, 1107-08 (D. Or. 2019).  Plaintiff's non-specific and speculative allegations that conduct relevant to this case took place in Washington, AC ¶ 130, are insufficient to show that the Washington CPA applies to its claims.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON
THE PLEADINGS
Page 34**

2005) (noting that plaintiff "can no longer pursue the class claims because his individual claim has been extinguished").  As Sero is the only named Plaintiff and fails to state an individual claim for coverage under the Policy, the putative class claims also must be rejected.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff has failed to state plausible claims for relief under the Policy and Defendant Continental Western is entitled to judgment on the pleadings.

DATED:  June 30, 2021

By    _s/ John A. Bennett_
John A. Bennett, OSB #750407
Stuart D. Jones, OSB #842568
BULLIVANT HOUSER BAILEY, PC
One SW Columbia Street, Ste. 800
Portland, Oregon 97204
Telephone: (503) 228-6351
E-mail:  john.bennett@bullivant.com
            stuart.jones@bullivant.com

and

Antonia B. Ianniello (admitted *pro hac vice*)
Sara Faber (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036
Telephone: (202) 429-8087
E-mail:  aianniello@steptoe.com

and

Darlene K. Alt (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
227 West Monroe Street, Ste. 4700
Chicago, Illinois  60606
Telephone: (312) 577-1262
E-mail:  dalt@steptoe.com

*Attorneys for Defendant Continental Western Insurance Company*

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS
Page 35**